CLERK'S OFFICE
A TRUE COPY
Oct 14, 2022
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of:

The Use of a Cell-Site Simulator to Locate the Cellular Device Assigned Call Number [(847) 650-8437]

)
)
)
)
)
)

Case No. **22-M-556 (SCD)**

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the Eastern District of Wisconsin:

   See Attachment A.

I find that the affidavit(s) or any recorded testimony, establish probable cause to search and seize the person or property described above and that such search will reveal:

   See Attachment B.

**YOU ARE COMMANDED** to execute this warrant ON OR BEFORE ___10-28-22___ (*not to exceed 14 days*)
☐ in the daytime between 6:00 a.m. and 10:00 p.m.    ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to ___Honorable Stephen C. Dries___.
(*United States Magistrate Judge*)

☒ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized (*check the appropriate box*)
   ☒ for __30__ days (not to exceed 30)    ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: __10-14-22 3:40 pm__             _Stephen C. Dries_ (signature)
                                                           *Judge's signature*

City and State: __Milwaukee, Wisconsin__     __Honorable Stephen C. Dries__, U.S. Magistrate Judge
                                                    *Printed Name and Title*

| **Return** | | |
|---|---|---|
| Case No: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of: | | |
| Inventory of the property taken and/or name of any person(s) seized: | | |

**Certification**

    I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the undersigned judge.


Date: _____        _____
<em>Executing officer's signature</em>

_____
<em>Printed name and title</em>

Subscribed, sworn to, and returned before me this date:


Date: _____        _____
<em>United States Magistrate Judge</em>

# ATTACHMENT A

This warrant authorizes the use of the electronic investigative technique described in Attachment B to identify the location of the cellular device assigned phone number 847-650-8437, whose wireless provider is Verizon Wireless.

This Warrant also serves as a Pen Register order under 18 U.S.C. § 3123. The Court makes the following findings: JAMONTE J. DAVIS is the person to whom the pen register or trap and trace device is to be attached/applied and who is the subject of the criminal investigation; 847-650-8437 is the phone number to which the device is to be attached; and Title 18 U.S.C. §§ 844(i) (arson of vehicle), 844(h) (use of arson in furtherance of another felony); and 922(g)(1) (Felon in Possession of a Firearm) are the offenses to which information relates. In addition, DAVIS is a fugitive from justice based upon Illinois state arrest warrants.

The attorney for the government has certified to this Court that the information likely to be obtained by the installation and use of the pen register or trap and trace device is relevant to an ongoing criminal investigation by the Federal Bureau of Investigation.

# ATTACHMENT B

## Particular Things to Be Seized
## with a Cell Site Simulator or Wi-Fi Geolocation Device

This Warrant authorizes the officers to whom it is directed to determine the location of the target cellular device by collecting and examining:

1. radio signals emitted by the target cellular device for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and

2. radio signals emitted by the target cellular device in response to signals sent to it by the officers;

for a period of thirty (30) days, during all times of day and night. This includes monitoring non-content signaling and routing information, including all non-content packet switched data, through the installation and use of a pen register and trap and trace device pursuant to 18 U.S.C. § 3123 by the Federal Bureau of Investigation. Because the use of the device, a Cell Site Simulator or Wi-Fi geolocation device, may fall within the definitions of a "pen register" or a "trap and trace device," see 18 U.S.C. § 3127(3) & (4), the application and the warrant are designed to comply with the Pen Register Statute as well as Rule 41. The application therefore includes all information required for and serves as a pen register application, 18 U.S.C. § 3123(a); similarly, the warrant therefore includes all the information required for and serves as a pen register order, 18 U.S.C. § 3123(b).

This warrant does not authorize the interception of any content (telephone, text message, or internet based). The investigative device may interrupt cellular service of phones or other cellular devices within its immediate vicinity. Any service disruption to non-target devices will

1

be brief and temporary, and all operations will attempt to limit the interference with such devices. In order to connect with the Target Cellular Device, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the Target Cellular Device, and law enforcement will limit collection of information from devices other than the Target Cellular Device. To the extent that any information from a cellular device other than the Target Cellular Device is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the Target Cellular Device from all other cellular devices.

Under this warrant, the cell site simulator / geolocation device shall be transferable to any changed dialed number subsequently assigned to a device bearing the same ESN, IMSI, or SIM as the Target Cellular Device; any changed ESN, IMSI, or SIM subsequently assigned the same dialed number as the Target Cellular Device; or any additional changed dialed number, ESN, IMSI, or SIM listed to the same subscriber account as the Target Cellular Device.

The Court finds reasonable necessity for use of the techniques and collection of information described. *See* 18 U.S.C. § 3103a(b)(2).

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the information described. *See* 18 U.S.C. § 3103a(b)(2).



CLERK'S OFFICE
A TRUE COPY
Oct 14, 2022
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of:

The Use of a Cell-Site Simulator to Locate the Cellular Device Assigned Call Number [(847) 650-8437]

)
)
)
)
)
)
)

Case No. 22-M-556 (SCD)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attachment A

over which the Court has jurisdiction pursuant to Title 18, United States Code, Sections 2703 and 2711, there is now concealed:

See Attachment B

The basis for the search under Fed. R. Crim P. 41(c) is:
☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of:
18 U.S.C. 844(i)                     Arson of a vehicle
18 U.S.C. 844(h)                    Use of Arson in Furtherance of another Felony
18 U.S.C. 922(g)(1)                Felon of Possession of a Firearm

The application is based on these facts: See attached affidavit.

☑ Delayed notice of __30__ days (give exact ending date if more than 30 days:_____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Special Agent Jacob A. Dettmering, FBI
Printed Name and Title

Sworn to before me Telephonically :
Date: 10-14-22
_____

_____
Judge's signature

City and State: Milwaukee, Wisconsin          Honorable Stephen C. Dries , U.S. Magistrate Judge
Printed Name and Title

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Jacob A Dettmering, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c) to authorize law enforcement to employ electronic investigative techniques, as described in the following attachment, to determine the location of the target cellular device assigned dialed number 847-650-8437, referred to in this affidavit as the "Target Cellular Device." The service provider for the target cellular device is Verizon Wireless. This affidavit is made in support of up to two different search warrants to locate the phone: 1) by obtaining information from the service provider, e.g., cell site and other precision location information and/or 2) by utilizing a device that acts as a cell phone tower sometimes referred to as a Cell Site Simulator or Wi-Fi geolocation device. In addition, because this request may be construed as a Pen Register / Trap and Trace device or request, the application for this warrant (which includes this affidavit) is intended to comply with 18 U.S.C. § 3122.

2. I am a Special Agent, with the Federal Bureau of Investigation and have experience in the investigation, apprehension, and prosecution of individuals involved in federal criminal offenses, the use of cellular devices to commit those offenses and the available technology that can be used by law enforcement to assist in identifying the users of cellular devices and their location.

3. The facts in this affidavit come from my personal observations, training, experience, and information obtained from other agents and witnesses. This affidavit is intended

1

to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. There is reason to believe the target cellular device is currently located in this district. The Waukegan, Illinois, Police Department currently has a ping warrant on the device pursuant to an Illinois State Search Warrant signed by the Honorable Judge Potkonjak on October 12, 2022. The Waukegan Police Department has verified that the device is located in the Eastern District of Wisconsin, specifically within a 600 meter radius of 107th and Brown Deer Road, Milwaukee, Wisconsin.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that JAMONTE J. DAVIS is using the Target Cellular Device. I know from training and experience that cell phone users normally have their cell telephones with them, so locating a user's cell phone will show that user's location. I believe that locating the Target Cellular Device will constitute and lead to evidence of federal offenses, namely 18 U.S.C. § 844(i) (Arson of a Vehicle); 18 U.S.C. § 844(h) (use of arson in furtherance of another felony); and 18 U.S.C. § 922 (Felon in Possession of a Firearm), committed by JAMONTE J. DAVIS. In addition, an arrest warrant was issued for JAMONTE J. DAVIS's arrest on October 8, 2022, for the crime of Murder. Accordingly, JAMONTE J. DAVIS is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

## PROBABLE CAUSE

6. On or about October 3, 2022, at 12:06 a.m., the Waukegan Police Department (Illinois) responded to reports of shots fired at 1334 Chestnut Street, in Waukegan, Illinois. Upon arrival, Officers found an adult male in the front driver's seat of a Nissan Altima bearing IL registration CF21896, which was parked in the driveway. The adult male was identified as

S.B. (DOB XX/XX/1980). S.B. was shot several times and at approximately 12:26AM, S.B. was pronounced deceased by Waukegan Fire Department Paramedics.

7. While processing the scene, Investigators found two (2) cell phones laying in the driveway near the Nissan Altima. Video surveillance in the area shows the suspect vehicle, described as a gray Dodge Charger, arrive at the address. At least two (2) subjects exit the Dodge Charger and fire multiple rounds at the victim's vehicle. One subject is seen in the driveway area where Investigators later recover two (2) cell phones. The subjects then leave the scene in the Dodge Charger at a high rate of speed. Video surveillance footage shows a cell phone fall out of the pocket of one of the subjects and land on the driveway as he/she runs to shoot at close range at the victim through the driver's side door.

8. At approximately 12:45 a.m. on October 3, 2022, a gray colored Dodge Charger identified on an Automatic License Plate Reader (ALPR) at Sheridan and HWY 165 in Pleasant Prairie, Wisconsin. The vehicle had an Illinois license plate bearing CJ39726. That registration, when checked through the Wisconsin Department of Transportation, showed it to be stolen out of Chicago, Illinois, on October 1, 2022.

9. At approximately 01:19AM on October 3, 2022, the Pleasant Prairie Police Department (Wisconsin) was dispatched to a single vehicle fire around 85th Street and 7th Avenue in Pleasant Prairie. Upon arriving, officers found a fully engulfed Dodge Charger with no owner/occupant on scene and all four doors open. The Fire Department arrived and immediately extinguished the fire. The vehicle had no license plates affixed to it, but the VIN was still readable. The VIN was 2C3CDXHG7GH226722 and according to a check of the Wisconsin Department of Motor Vehicles, that vehicle had an assigned license plate of Illinois CJ39726. As stated, this vehicle was reported stolen in Chicago on October 1, 2022.

10. Located in and around the vehicle were brass casings for 9mm and .40 S&W ammunition, which were the same calibers used in the homicide of S.B. in Waukegan, Illinois, hours before the vehicle fire.

11. Regarding the phones mentioned in paragraph 7 of this affidavit, subsequent search warrants of the phones recovered from the homicide scene revealed both phones belonged to JAVONTE DAVIS (DOB XX/XX/1997). DAVIS, a documented Gangster Disciple Gang member, has arrest warrants outstanding for felony firearms violations and an Illinois Department of Corrections for Violation of Probation.

12. Upon analyzing one of the phones, Detective Llenza of Waukegan Police Department learned the Apple ID assigned to the phone was KamKappa4l@icloud.com. Furthermore, Detective Llenza learned that the Facebook account associated with the phone utilized the Facebook moniker "Kam Fa Kam." Detective Llenza knows that the Facebook account "Kam Fa Kam" belongs to DAVIS. Finally, the device had a secondary email, monteball427@gmail.com. Detective Llenza knows "Monte" to be a nickname for DAVIS.

13. With this information Detective Llenza, through lawful legal process, obtained information from the Facebook account "Kam Fa Kam" belonging to DAVIS, who is suspected to be one of the shooters in the Waukegan Homicide of S.B. Detective Llenza learned of an IPV6 number utilized to log into the Facebook account "Kam Fa Kam." Through additional investigative techniques Detective Llenza learned that the IPV6 number belonged to a Verizon TracPhone. Again, through lawful legal process Detective Llenza obtained records from Verizon showing that the IPV6 number used to log into DAVIS' Facebook account had an associated phone number of (847) 650-8437, the number corresponding to the Target Cellular Device.

14. Detective Llenza obtained toll records from Verizon and upon analyzing the toll

records he noted that (847) 650-8437 was in contact with at least two known associates to DAVIS including another suspect in this investigation, WILLIAM FILLYAW and N.D., DAVIS' girlfriend.

15. While reviewing the Apple iPhone, Investigators were able to identify text messages between DAVIS and a person identified as "Will," later identified as WILLIAM FILLYAW. DAVIS and FILLYAW discuss going to Chicago to pick up a gray Dodge Charger. Investigators were able to obtain video from an Oasis rest area between Waukegan and Chicago, where they positively identified DAVIS and FILLIAW exit a black conversion van bearing Wisconsin registration ANB9487.

16. The Apple iPhone that was recovered also provided historical location data for the cell phone. The locations show the device at the scene of the homicide of S.B. It also shows the device travel from Zion to Chicago on the evening leading into the homicide, when it's believed the suspect vehicle was obtained/stolen. The location data also shows the device around Grand/Jackson BP Gas Station in Waukegan at approximately 11:50PM on October 2, 2022.

17. Surveillance video recovered from that location shows what appears to be DAVIS, arrive in the suspect vehicle, and go inside wearing a mask and gloves. DAVIS was wearing distinct pants with an "A" design placed between wings on the front left pocket area of the pants. DAVIS was seen wearing the same pants on his Kam Fa Kam Facebook user profile.

18. At approximately 12:10AM on October 3, 2022, a black conversion van bearing Wisconsin registration ANB9487, consistent with the one described above at the Oasis rest area, was captured on traffic cameras approximately one and a half blocks away from the scene of the homicide of S.B., leaving the area, and travelling north in the direction of Kenosha, Wisconsin. Additionally, FILLYAW's phone, 224-946-6088 was pinging in the location of the homicide of

5

S.B. at the time the homicide occurred.

19. Additionally, at approximately 12:36AM on October 3, 2022, the black conversion van bearing Wisconsin registration ANB9487, previously identified as being used by DAVIS and FILLYAW at the Oasis rest area, arrived at a Shell gas station located at 11748 75th Street, in Kenosha, Wisconsin. The driver exited the vehicle and purchased a 2-gallon gas can and $8.50 worth of gasoline. Surveillance cameras from the gas station show FILLYAW was the person purchasing the gas can and gasoline. FILLYAW then re-enters the vehicle and travels east towards Pleasant Prairie.

20. Detective Llenza utilized this information to obtain a location warrant for phone number (847) 650-8437 which he believes is being utilized by DAVIS. That warrant was approved and signed by Lake County Illinois Circuit Court Judge Potkonjak on October 12, 2022. Detective Llenza noted that the phone was pinging in Milwaukee, Wisconsin, as recently as October 13, 2022. Furthermore, the ping radius was not very accurate. Investigators from the Milwaukee Area Safe Streets Task Force attempted to locate DAVIS and take him into custody based on his outstanding homicide warrant in Illinois but have thus far been unsuccessful based on poor ping accuracy. Affiant knows that the Federal Bureau of Investigation can utilize a device that acts as a cell phone tower sometimes referred to as a Cell Site Simulator or Wi-Fi geolocation device and that the device can be used to identify the location of cell phones much more accurately than ping locations provided by phone service providers.

21. Information obtained from this search warrant will be used to attempt to locate JAMONTE J. DAVIS within the next 30 days.

**AUTHORIZATION REQUEST & MANNER OF EXECUTION**

22. I request that the Court issue the proposed search warrant pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c) and 2711.

23. Because collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), this application and the accompanying warrant are intended to comply with requirements set forth in 18 U.S.C. §§ 3122-3123.

24. In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications. When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

25. In my training and experience, I have learned that Verizon Wireless is a company with its headquarters located within the United States and provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of cellular devices to which they provide service. That information includes (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, (2) cell-site data, also known as "tower/face information" or cell tower/sector records, and (3) timing advance or engineering data commonly referred to as per call measurement data (RTT, True Call, LDBoR, or equivalent). E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e.,

antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.

26. To facilitate execution of this warrant, law enforcement may use an investigative device or devices (sometimes referred to as a Cell Site Simulator or Wi-Fi geolocation device) capable of broadcasting signals that will be received by the Target Cellular Device or receiving signals from nearby cellular devices, including the Target Cellular Device. Such a device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell phone to communicate with others. The device may send a signal to the Target Cellular Device and thereby prompt it to send signals that include the unique identifier of the device. Law enforcement may monitor the signals broadcast by the Target Cellular Device and use that information to determine the Target Cellular Device's location, even if it is located inside a house, apartment, or other building.

27. The investigative device may interrupt cellular service of phones or other cellular devices within its immediate vicinity. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices. In order to connect with the Target Cellular Device, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the Target Cellular Device, and law enforcement will limit collection of information from devices other than the Target Cellular Device. To the extent that any information from a cellular

8

device other than the Target Cellular Device is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the Target Cellular Device from all other cellular devices.

28. I request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the target cellular device would seriously jeopardize the ongoing investigation. Such disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). There is a reasonable necessity for the use of the techniques described. *See* 18 U.S.C. § 3103a(b)(2). As further specified in the attachment, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is a reasonable necessity for that seizure. *See* 18 U.S.C. § 3103a(b)(2).

29. I further request the following information from the service provider: the installation and use of a pen register trap and trace device, all real-time precision location information, including E-911 Phase II data, GPS data, and latitude-longitude data, real time cell

9

site information, and per call measurement or timing advance data (RTT, True Call, LDBoR, or equivalent) beginning 30 days from the date the warrant is issued.

30. I further request call detail records and data reports (voice, SMS, MMS), including cell site location information, originating and destination IP addresses, per call measurement or timing advance data (RTT, True Call, LDBoR, or equivalent) for the past 30 days.

31. I further request subscriber and extended subscriber information, handset identifiers, handset make and model, Wi-Fi MAC address, and account notes and memos for the target device.

32. I further request all stored messaging content.

33. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the target cellular device outside of daytime hours.

34. I further request that the pen register / trap and trace device be transferable to any changed dialed number subsequently assigned to a device bearing the same ESN, IMSI, or SIM as the Target Cellular Device; any changed ESN, IMSI, or SIM subsequently assigned the same dialed number as the Target Cellular Device; or any additional changed dialed number, ESN, IMSI, or SIM listed to the same subscriber account as the Target Cellular Device.

35. I further request that the Court order all documents in support of this application, including the affidavit and search warrant, be sealed until further order by the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize the investigation. I further request that the

Court order any service provider, or their representatives, not to disclose the existence of this warrant or investigation unless ordered to do so by the Court.

36. A search warrant may not be legally necessary to authorize all of the investigative techniques described. Nevertheless, I submit this warrant application out of an abundance of caution.

# ATTACHMENT A

This warrant authorizes the use of the electronic investigative technique described in Attachment B to identify the location of the cellular device assigned phone number 847-650-8437, whose wireless provider is Verizon Wireless.

This Warrant also serves as a Pen Register order under 18 U.S.C. § 3123. The Court makes the following findings: JAMONTE J. DAVIS is the person to whom the pen register or trap and trace device is to be attached/applied and who is the subject of the criminal investigation; 847-650-8437 is the phone number to which the device is to be attached; and Title 18 U.S.C. §§ 844(i) (arson of vehicle), 844(h) (use of arson in furtherance of another felony); and 922(g)(1) (Felon in Possession of a Firearm) are the offenses to which information relates. In addition, DAVIS is a fugitive from justice based upon Illinois state arrest warrants.

The attorney for the government has certified to this Court that the information likely to be obtained by the installation and use of the pen register or trap and trace device is relevant to an ongoing criminal investigation by the Federal Bureau of Investigation.

# ATTACHMENT B

## Particular Things to Be Seized
## with a Cell Site Simulator or Wi-Fi Geolocation Device

This Warrant authorizes the officers to whom it is directed to determine the location of the target cellular device by collecting and examining:

1. radio signals emitted by the target cellular device for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and

2. radio signals emitted by the target cellular device in response to signals sent to it by the officers;

for a period of thirty (30) days, during all times of day and night. This includes monitoring non-content signaling and routing information, including all non-content packet switched data, through the installation and use of a pen register and trap and trace device pursuant to 18 U.S.C. § 3123 by the Federal Bureau of Investigation. Because the use of the device, a Cell Site Simulator or Wi-Fi geolocation device, may fall within the definitions of a "pen register" or a "trap and trace device," see 18 U.S.C. § 3127(3) & (4), the application and the warrant are designed to comply with the Pen Register Statute as well as Rule 41. The application therefore includes all information required for and serves as a pen register application, 18 U.S.C. § 3123(a); similarly, the warrant therefore includes all the information required for and serves as a pen register order, 18 U.S.C. § 3123(b).

This warrant does not authorize the interception of any content (telephone, text message, or internet based). The investigative device may interrupt cellular service of phones or other cellular devices within its immediate vicinity. Any service disruption to non-target devices will

1

be brief and temporary, and all operations will attempt to limit the interference with such devices. In order to connect with the Target Cellular Device, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the Target Cellular Device, and law enforcement will limit collection of information from devices other than the Target Cellular Device. To the extent that any information from a cellular device other than the Target Cellular Device is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the Target Cellular Device from all other cellular devices.

Under this warrant, the cell site simulator / geolocation device shall be transferable to any changed dialed number subsequently assigned to a device bearing the same ESN, IMSI, or SIM as the Target Cellular Device; any changed ESN, IMSI, or SIM subsequently assigned the same dialed number as the Target Cellular Device; or any additional changed dialed number, ESN, IMSI, or SIM listed to the same subscriber account as the Target Cellular Device.

The Court finds reasonable necessity for use of the techniques and collection of information described. *See* 18 U.S.C. § 3103a(b)(2).

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the information described. *See* 18 U.S.C. § 3103a(b)(2).